UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-60786-CIV-UNGARO

INNOVATIVE HEALTH AND WELLNESS LLC,
    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
    Defendant.
_____/

## ORDER ON PLAINTIFF'S MOTION FOR REMAND

THIS CAUSE is before the Court upon Plaintiff's Motion for Remand, filed June 17, 2008. (D.E. 11.) Defendant filed its Response on July 3, 2008, (D.E. 20) to which Plaintiff replied on July 21, 2008. (D.E. 26.) The matter is ripe for disposition.

THE COURT has considered the motion, the pertinent portions of the record, and is otherwise fully advised in the premises.

By way of background, on behalf of itself and a proposed class of healthcare providers, Plaintiff Innovative Health and Wellness, LLC ("Innovative Health") has filed this action for declaratory judgment and breach of contract arising out of Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") alleged wrongful reduction of payments to healthcare providers under "no-fault" motorist personal injury protection ("PIP") insurance policies in effect as of January 1, 2008. Plaintiff seeks unspecified damages as well as injunctive and declaratory relief.

Plaintiff commenced this action on or about April 17, 2008, by filing a complaint in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida. On May 23, 2008, Defendant filed a petition for removal of the action to this Court pursuant to the Class

Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified at 28 U.S.C. §§ 1332(d),[1] 1453) and 28 U.S.C. § 1441.  Plaintiff now moves the Court to remand the action for lack of jurisdiction, on grounds that the requisite $5,000,000.00 amount in controversy was not satisfied at the time of removal.[2]

## LEGAL STANDARD

The CAFA's removal provision, § 1453(b), expressly adopts the procedures of the general removal statute, § 1446.  *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1211-12 (11th Cir. 2007).  And, under § 1446(b), "in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff—be it the initial complaint or a later received paper—and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." *Id*. at 1213.  Thus, in determining whether removal under the CAFA is appropriate, a court is generally limited to the "universe of evidence available when the motion to remand is filed—*i.e.*, the notice of removal and accompanying documents." *Lowery*, 483 F.3d at 1214.  "If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in

---

[1] Generally speaking, 28 U.S.C. § 1332(d) affords the district courts original jurisdiction of any civil action in which (1) the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, (2) there is diversity of citizenship as defined in that subsection, and (3) the number of members of all proposed plaintiff classes in the aggregate is more than 100.

[2] The issue of whether subject matter jurisdiction exists is determined by looking to the complaint as it existed at the time the petition for removal was filed. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38 (1939).
It is undisputed that diversity of citizenship existed at the time Plaintiff commenced this action in state court and continues to exist as of the time of filing of the petition for removal.  It is also undisputed that the number of members of all proposed plaintiff classes in the aggregate is more than 100.

an attempt to make up for the notice's failings." *Id*. at 1214-15.

Where damages are unspecified, the burden is on the party seeking to remove under the CAFA to establish by a preponderance of the evidence that the CAFA's jurisdictional requirements are satisfied. *See id.* at 1208-11; *see also Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir. 2006). Moreover, "the factual information establishing the jurisdictional amount must come from the plaintiff."[3] *Id*. at 1215 n.66. Once the removing party demonstrates that the CAFA's jurisdictional requirements are satisfied, the burden shifts to the party opposing removal to establish that one of the exceptions to the CAFA applies. *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006).

## ANALYSIS

In the Complaint, Plaintiff seeks damages in excess of $15,000.00, and states that it is "unsure of whether the claims in this case in the aggregate exceed $5,000,000.00." (Compl. ¶ 3.) The Complaint alleges that pursuant to the PIP insurance policy it issued to Plaintiff's assignor, Amanda McCaffrey, Defendant is obligated to pay 80% of all reasonable expenses incurred for medically necessary services, that in determining whether a charge is reasonable Defendant may consider a variety of enumerated factors, including various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other relevant

---

[3]The *Lowery* court noted that "there are some exceptions to the rule," for example, a defendant "would be free to introduce evidence regarding damages arising from a source such as a contract provision whether or not the defendant received the contract from the plaintiff," because "[i]n such situations, the underlying substantive law provides a rule that allows the court to determine the amount of damages." *Lowery*, 483 F.3d at 1215 n.66. The *Lowery* court observed that "[b]y contrast, 'where the law gives no rule, the demand of the plaintiff must furnish one.'" *Id*. (quoting *McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 182 (1936)).

information, and that Defendant is not obligated to pay any charge that Florida's "no-fault" statute does not require it to pay, or any amount that exceeds the amount that Florida's "no-fault" statute allows to be charged. (Compl. ¶ 8.)

The Complaint further alleges that Florida's new "no-fault" statute, Fla. Stat. § 627.736 (2007), which went into effect on January 1, 2008, requires that insurers pay 80% of all reasonable expenses for medically necessary services, and that "the insurer 'may' limit reimbursement to 80 percent of various fee schedules, including, but not limited to 200% of Medicare charges for most services." (Compl. ¶ 6.) Plaintiff alleges that the new "no-fault" statute "is silent with respect to the utilization of any of the possible fee schedules allowed or enumerated under [the statute]," and that it therefore "allow[s] for a choice by insurers, such that [it] does not automatically amend any existing policy, nor does it advise the insured or the health care providers providing care and treatment to insureds as to which payment formula or Medicare fee schedule is to be implemented by the insurer." (Compl. ¶¶ 7, 9.)

Plaintiff alleges that Defendant wrongfully reduced the amount of its payments made to healthcare providers under its PIP insurance policies issued before the statute went into effect on January 1, 2008 by utilizing fee schedules as provided under Florida Statutes § 627.736 (2007), without either (1) changing its aforementioned PIP insurance policies or (2) issuing an endorsement or some other notice to its insured stating its intent to apply the aforementioned fee schedules in calculating the amount of its payments made to healthcare providers under its aforementioned PIP insurance policies. (Compl. ¶ 10.)

Plaintiff seeks to certify a proposed class defined as follows:

Class Definition

>Any and all health care providers who provide medical services to a patient who is insured by a STATE FARM no-fault insurance policy that provides coverage during a policy period on or after January 1, 2008.
>
>Subclass Definition
>
>Any and all health care providers who submitted claims for no-fault benefits under PIP policies in effect as of January 1, 2008 where STATE FARM utilized a fee schedule pursuant to Florida Statute [sic] § 627.736(5)(a)2 (2007) to reduce payment.

(Compl. ¶ 11.)

In support of its breach of contract claim, Plaintiff specifically alleges that it "furnished Defendant insurance company with the medical bill(s) and supporting documentation indicating that reasonable and necessary services were rendered to Amanda McCaffrey in the total amount of $977.24, along with a Demand for payment," (Compl. ¶ 28) and that "[p]ursuant to the policy of insurance with Defendant, said medical bills should have been paid at the rate of eighty percent (80%) of reasonable and customary charges," but that "Defendant breached its contract when it failed to pay the eighty percent (80%) of the medical bill claims submitted by INNOVATIVE HEALTH, and thereby leaving a balance owed to Plaintiff" (Compl. ¶ 29). Along with the Complaint, Plaintiff filed an "Explanation of Review" sheet issued by Defendant to Plaintiff's assignor, Amanda McCaffrey. (Compl., Ex. B.) The explanation of review sheet shows a "total submitted charges" amount of $707.04, a "total approved amount" of $279.88, and a "total paid amount" of $223.90. (Compl., Ex. B.) The explanation of review sheet also includes a photocopy of a check for $223.90 made payable to Innovative Health, signed by Defendant in connection with McCaffery's claim. (Compl., Ex. B.)

In its notice of removal, Defendant estimates that the amount in controversy for damages

exceeds $5,000,000.00 based on (1) the affidavit of Defendant's systems analyst Chris Blair, in which he states that from January 1, 2008 through April 17, 2008,[4] Defendant paid $28,062,046.63 in PIP benefits for medical treatment on 14,934 claims (Notice of Removal, Ex. C); (2) the affidavit of Defendant's claims representative Harold Ly, in which he states that during the period from January 1, 2008 through April 18, 2008 Plaintiff submitted bills for its treatment of Amanda McCaffrey in the total amount of $11,601.46, and that Defendant paid Plaintiff a total of $3,786.27 (Notice of Removal, Ex. D); and (3) the explanation of review sheet Plaintiff filed as Exhibit B to its complaint, which demonstrates that Defendant paid $223.90 on a bill for $707.04 (Compl., Ex. B).

Defendant asserts that applying the 40.8% payment rate to the $28,062,046.33 in PIP payments since January 1, 2008, the amount in controversy would be $40,717,479.42.[5] (Notice of Removal ¶ 16.) Defendant further asserts that applying the 39.6% payment rate to the $28,062,046.33 in PIP payments since January 1, 2008, the amount in controversy would be $42,801,707.54.[6] (Notice of Removal ¶ 17.) Defendant asserts that "[s]imply by using the amount Plaintiff claims is due for its treatment of McCaffrey, multiplied by the 14,934 claims on which payments were made through the date of the filing of the Complaint, the amount in

---

[4] As noted above, Plaintiff filed its complaint on April 17, 2008.

[5] Defendant arrives at the 40.8% figure because Defendant argues that, based on Plaintiff's allegations in the Complaint, 40.8% is the amount Plaintiff was paid over the amount Plaintiff should have been paid on the $11,601.46 McCaffrey bill. In other words, $3,786.27 is 40.8% of $9,281.19. (The Court notes that $9,281.19 is 80% of $11,601.46.)

[6] Defendant arrives at the 39.6% figure because, Defendant argues that, based on Plaintiff's allegations in the Complaint, 39.6% is the amount Plaintiff asserts it was paid over the amount it should have been paid on the $707.04 McCaffrey bill. In other words, $223.90 is 39.6% of $565.63. (The Court notes that $565.63 is 80% of $707.04.)

controversy would be $82,061,135.28." (Notice of Removal ¶ 18.) Defendant further asserts that using "just the amount Plaintiff claims is due on the single bill Plaintiff attached to its Complaint . . . multiplied by the 14,934 claims, the amount in controversy still exceeds $5 million, at $5,103,395.82." (Notice of Removal ¶ 19.) Defendant also asserts that it is seeking to recover its attorneys' fees pursuant to Florida Statutes § 627.428. (Notice of Removal ¶ 20.)

The problem with Defendant's notice of removal is that Defendant improperly relies on documents that were not supplied by Plaintiff. In other words, Defendant may not rely on the affidavits of Chris Blair and Harold Ly to establish the requisite jurisdictional amount because Defendant did not receive this factual information from Plaintiff.[7] Rather, as *Lowery* makes unequivocally clear, where, as here, the damages are unspecified in the Complaint, the factual information establishing the jurisdictional amount must come from the plaintiff; therefore the only documents upon which Defendant may rely in order to meet its burden of establishing by the preponderance of the evidence that the amount in controversy exceeds $5,000,000.00 are the documents provided to it by Plaintiff. And, in this case, it appears from the record that the only such documents are (1) the Complaint, and (2) the explanation of review sheet Plaintiff filed as Exhibit B to its Complaint, which demonstrates that Defendant paid $223.90 on a bill for $707.04. Applying the controlling principles of law articulated by the Eleventh Circuit in *Lowery*, the Court finds that—based on the abovementioned removing documents upon which it

---

[7]The Court notes that all of the district court cases upon which Defendant relies in support of its use of the type of calculations and evidence included in support of its notice of removal—many of which are from outside of the Eleventh Circuit—predate the Eleventh Circuit's opinion in *Lowery*, which is controlling as to the issue of what evidence a removing defendant may rely upon in asserting jurisdiction. *Lowery*, 483 F.3d at 1211(addressing, in the context of its interpretation of the CAFA, the following issue: "on what evidence may a removing defendant rely in asserting jurisdiction?").

may properly rely—Defendant has failed to meet its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.00. Accordingly, it is hereby

ORDERED and ADJUDGED that Plaintiff's Motion to Remand is GRANTED and this cause is REMANDED to the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida.

DONE AND ORDERED in Chambers at Miami, Florida, this 11th day of August, 2008.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
Counsel of Record